Gkeen, J.
delivered the opinion of the court.
This is an appeal from the judgment of the Circuit Court of Williamson county, upon the finding of a jury upon an issue of devisavit vel non.
At the June term, 1846, of the Williamson County Court, a paper writing purporting to be the last will and testament of *327 William Patton, deceased, was propounded in said court for probate, by Samuel Patton, one of the executors therein named, the other executor, John Patton, having renonneed the execution thereof. Thereupon William Allison, William De-mumbrane, John B. Patton, William D. Patton, and Lucy Patton, by their attornies, appeared in court, and contested the validity of said paper writing, as the will of said William Patton. The said contestants entered into bond, conditioned as the law directs. Whereupon the fact of said contest was certified to the Circuit Court of said county, together with the paper propounded as said will, to the end that the validity thereof might be tried by a jury.
At the July term, 1846, of the Circuit Court, an issue was formed between the said Samuel Patton, executor, named in said will, and William Allison, and Charity his wife, William Demumbrane and Mary his wife, John B. Patton, Samuel Davidson, William D. Patton, John Patton, Margaret Patton, Sarah Patton, Catharine Patton, and Susan Patton, who contest the validity thereof. At the November term, 1846, upon motion, the court permitted William Demumbrane, and Mary his wife, and William D. Patton to withdraw from the issue: and the other defendants entering into bond with security for costs, prosecuted the same.
William Patton left no children, and his brothers and sisters are his heirs at law, and distributees of his estate, if he died intestate. Mary Demumbrane, wife of William Demumbrane, is a sister of said William Patton deceased.
On the trial, an assignment from William Demumbrane, and Mary, his wife, to their children, was produced, by which they conveyed all their interest in law and equity to the estate, real and personal, of William Patton deceased, and in consideration of a settlement made upon her by the said William De-mumbrane, the said Mary did assign, release and quit-claim to the persons aforesaid, all her right in equity to have a settlement of any part of her interest in the personal estate of said William Patton. This deed of assignment was acknowledged by the bargainors, before the clerk of the County Court, and the privy examination of the feme covert and her acknowledg *328 ment was also taken by him, according to the form of the statute for taking acknowledgment of deeds for the conveyance of real estate — and it was registered.
William Demumbrane, and Mary Demumbrane, were then offered as witnesses for the defendants to the issue — and to their examination as witnesses, the plaintiff objected on the ground that they were interested in the event of the cause, and were therefore imcompelent: but the court overruled the objection, and permitted the said witnesses to give testimony before the jury — to which the plaintiff excepted. The jury found the issue against the validity of the will, and the court-refused to set aside the verdict, but gave judgment that the paper writing propounded for probate, is not the will of William Patton deceased. From this judgment the plaintiff assigns for error, that Demumbrane and wife were improperly examined as witnesses in the cause. It is first objected, that the court had no power to permit them to withdraw from the issue, after it had been formed by them as parties in connection with the other defendants. We are of opinion there was no error in this proceeding.
By the act of the 25th of January, 1836, when a will offered for probate shall be contested, the fact is certified, and the will is to be sentto the Circuit Court, where an issue is to be formed to try the validity thereof, and the verdict of the jury and judgment of the court thereon is to be certified to the County Court; and the original will if established, is to be sent back to the County Court to be recorded.
In all cases therefore of contested wills, the Circuit Court is the court of probate. After the issue is found in favor of the validity of a will, there is no probate in the County Court. It has been already proved upon the trial of the issue, and it is sent back to the County Court to be recorded, and that letters testimentary may be granted thereon. In forming this issue all persons interested either for or against the will have a right to be made parties. It is a proceeding m rem, and the judgment binds all persons whether parties on the record or not. 4 Ired. L. R. 335, 342; 6 Ired. L. R. 212; 5 Ired. L. R. 97; Ford vs. Ford, M. S. It must follow, that the court in which the issue *329 is formed and tried, must have all necessary power to effectuate justice in the case, and to this end may permit parties on the record to withdraw, and new parties to intervene as in its discretion it may see the ends of justice require; and this whether they appear in the attitude of plaintiffs or defendants; for being a proceeding in rem, both parties are actors and in the strict sense, none are defendants, sued and made parties against their will.
In the M. S. case of Thruston vs. Kercheval, the only point decided by this court was, that a party having no interest and not named as executor, had no right to propound a will for probate, and could not be a party to an issue for the trial of its validity, and that the attempt afterwards in the Circuit Court to permit another person to intervene in support of the will was properly refused by the court, because the will never having been propounded by a person authorized to do so, was not properly before the court for contest.
In the case before us, the initiatory proceedings have been regular, and the only irregularity complained of is, that a portion of the contestants were permitted to withdraw from the issue, aud this, we think was not erroneous. If there be but one contestant upon the record, the decision will bind all parties in interest as conclusively as if all are parties to the issue. The plaintiffs in error therefore could not be injured by the withdrawal of Demumbrane and wife.
2. Demumbrane and wife assigned their interest in the estate of William Patton deceased, and were offered as witnesses. The plaintiffs insist that they are rendered incompetent by the provisions of the act of 1821, ch. 66, sec. 3; C. and N. 111. The part of the section relied on is in the following words — “nor shall any attorney or other person under pretext of having transferred his interest to real estate or obligations for the performance of contracts or notes for money, during the pendency of any suit at law, be permitted to give testimony in favor of those who held a joint interest with him, her or them at the commencement of said suits or by which they themselves could be released from any liability to perform contracts or pay money.” The plain meaning of which is, that a per *330 son who has a joint interest in land or obligation for the performance of a contract or note for money, shall not, during the pendency of a suit for such land, the performance of such obligation or the recovery of the money on such note, under a pretext of having transferred such interest, become a witness in any such suit.
No one has contended or could contend that this is a suit for land or upon an obligation for the performance of a contract or on a note for money; as has been said, it is a proceeding in rent, the effect of which is to determine as to the validity of a will. It adjudges nothing as to the title to land, the obligation to perform a contract, or the payment of a note for money. It is therefore plainly not within the letter of this statute, the provisions of which are not of a character calling on the cóurt to amplify its operation, beyond the cases specially designated in the law.
3. It is insisted that Mrs. Demumbrane is incompetent, because she could not, by this assignment, divest herself of her interest in her brother’s estate. We fully concur with the counsel for the plaintiff in error that Mrs. Demumbrane’s assignment of her distributive share of her brother’s estate is not binding on her executed and acknowledged before the County Court Clerk only; nor will her husband’s assignment, bar her right to a settlement of a portion of said share upon her, should she choose to bring her bill for that purpose, or should the as-signee come into a court of chancery to recover it; “the rule now being settled to be, that if the husband assign the equitable interests of the wife, equity will not assist such assignee to acquire the possession of them, unless he submit to make a provision for her, even though that assignee should have paid a valuable consideration for them:” Clancy on rights, 494. But the husband’s assignment passes the wife’s choses in action to the assignee, discharged of her equity to a settlement, provided they be reduced to possession without coming into a Court of Chancery; or any application to the court in behalf of the wife. The husband’s assignment of the wife’s equitable interests for a valuable consideration, is therefore valid, except upon the contingency that the wife shall bring her bill for a set- *331 dement, or the assignee shall be compelled to come into equity to reduce them to possession. 2 Story’s Eq. Juris, sec. 1412, p. 790, note. The question then is, does such contingent interest render her incompetent to testify as a witness.
In 1 Greenleaf on Evidence, sec. 408, it is laid down, “that a remote, contingent and uncertain interest does not disqualify the witness. Thus a paid legatee of a specific sum or of a chattel is a competent witness for the executor; for though the money paid to a legatee may sometimes be recovered back, whdn necessary for the payment of paramount claims, yet it is not certain that it will be needed for such purpose.” So in sec. 427, “a release by an infant is generally sufficient for this purpose; for it may be only voidable and not void, in which case a stranger shall not object to it.” The case before us, we think, falls within the principle of the illustration above quoted, and sustains the judgment of the Circuit Court.
4. But it is said the assignment made by Demumbrane is void, because it is the assignment of the mere right to sue, and 2 Story’s Eq. sec. 1040 is referred to, where it is said, “so a mere right of action for a tort is not for a like reason assignable. Indeed it has been laid down as a general rule — that where an equitable interest is assigned in order to give the as-signee a locus standi in judicio, in a court of equity, the party assigning such right must have some substantial possession, and some capability of personal enjoyment and not a mere naked right to overset a legal instrument or to maintain a suit.” The principle here laid down is not applicable to the case before the court. The author is treating of cases, where the as-signee, by virtue of his assignment, may maintain a suit and where he may not. In order to give the assignee a right to sue, the party assigning must have something more than a mere naked right to overset a legal instrument.
But in the case before us the assignees are attempting to maintain no suit by virtue of the assignment. They are not parties on the record — nor is this proceeding an attempt to overset a legal instrument. A paper is propounded for probate as a will. The contest is, whether it is not like the case of a *332 deed regularly executed but which may be set aside for fraud or other reason.
5. Several errors, it is insisted, were committed by his hon- or in his charge to the jury. It appears from the bill of exceptions, that the will was written by Samuel Patton and that the entire estate, worth 40 or 50,000 dollars is given to himself and his brother, John Patton, to the exclusion of their other brothers and sisters. It is insisted his honor erred, when he told the jury that “when a person writes a will in his own favor, such conduct creates a presumption against the act and renders necessary very clear proof of volition and capacity, as well as of a knowledge by the testator of the contents of the instrument.” In connection with this statement his honor read from 7 Ecc. Rep. 93 as follows: “I never understood the doctrine of this court to go beyond this, namely, that itis a circumstance which should awaken the vigilance and jealousy of the court to watch and see whether by some means or other, a knowledge of the contents was brought home to the deceased, or it was shown that it was the intention of the deceased to make such a disposition of his property; which the court would accept as sufficient proof, notwithstanding the drawer of the will took a considerable benefit under it.”
Take the whole of this statement, and we understand his honor as holding “that where a party writes a will in his own favor, this circumstance should awaken the vigilance and jealousy of the jury, to see whether a knowledge of its contents was brought home to the deceased; for in such case, it is incumbent on the propounder to show that the contents were known to the testator. This, we think, is a correct statement of the law upon the subject. Ordinarily, proof of the execution of the instrument and that the party is of sound mind is sufficient. It is presumed that a party of sound mind, who executed an instrument as his will, is acquainted with its contents. But where it is written by one who takes a large interest under the will, that circumstance, according to all the authorities is calculated to awaken suspicion. This suspicion as his honor told the jury in a preceding part of the charge, “will be of greater or less weight, according to all the facts of the *333 caso; such for instance as the amount of the benefit, its proportion to the whole estate, the claims of the party on the bounty of the deceased” &c.
This view of the subject is strongly stated by Chief Justice Ruffin in Downy vs. Murphy, 1 Dev. and Bat. L. R. 92. The facts upon which the validity of a will depends, he says, must be left to the decision of a jury, “upon evidence as to all the circumstances attending its preparation and execution, the condition, mental and physical of the testator, the contents of the instrument and the benefits provided in it for those actively concerned either in the preparation or execution. Evidence upon each of these points may have an important bearing upon the just conclusions to be formed of the testator’s capacity, and of the advantages that may have been taken of his weakness or confidence: and a jury may justly be alarmed at the danger of exposing testators to importunities and imposition, which would follow from establishing papers to be wills, when obtained in extremis, and under suspicious circumstances, unless those suspicions be removed by affirmative and plenary evidence that the testator comprehended the dispositions made by him and fully and freely sanctioned them.” But this question say the court, “is one of fact, to be decided by the jury, upon evidence; which in the opinion of the judge is competent, as tending to establish any of these facts.” Here the court say, that the suspicion these circumstances excite, should be removed by “affirmative, plenary evidence that the testator comprehended the dispositions made by him, and fully and freely sanctioned them.” The plain meaning of this statement is, that the jury ought not to be satisfied when these suspicious circumstances exist in the case, with the mere proof of the execution of the will, and that the deceased was of testable capacity. This ordinarily is prima facie evidence of knowledge of the contents, but it ought not to satisfy the jury that a testator had such knowledge, if the will is prepared by one who is greatly benefitted by its provisions, and executed by a testator of weak intellect when in extremis. In such case, there ought to be “affirmative, plenary evidence” that he had knowledge of its contents and fully and freely sanctioned them. *334 This doctrine is also fully sustained by the court in the case of Barry vs. Batton, 1 Curt. 636, 6 Ecc. Rep. 417. Mr. Baron Park in declaring the judgment of the court, says, “lha£ if a party writes or prepares a will, under which he takes a benefit, that is a circumstance which ought generally to excite the suspicion of the court, and calls upon it to be vigilant and jealous in examining the evidence in support of the instrument, in favor of which it ought not to pronounce unless the suspicion is removed, and it is judicially satisfied that the paper propounded does express the true will of the deceased.” “Their lordships are fully sensible,” he says, “of the wisdom of this rule and the importance of its practical application on all occasions.” Although in that case, the court, in commenting on the case of ParKe vs. Ollatt, 2 Phill. 323, 1 Ecc. Rep. 273, deny that there is any rule of law, “that in every case in which a party preparing a will, derives a benefit under it, the onus frobandiis shifted and a certain measure and particular species of proof is required from a party propounding a will;” yet they say, “there are cases of wills prepared by legatees, sopiegnant with suspicion, that they ought to be pronounced against, in the absence of evidence in support of them, and that extending to clear proof of the actual knowledge of the contents by the supposed testators.” This doctrine is still more strongly stated by Sir John Nichol, in ParKe vs. Ollatt, and fully sustained by Sir Herbert Jenner, in Darling vs. Loveland. 2 Curtis, 225, 7 Ecc. Rep. 93.
It will be seen by mere reference to the cases cited, that there is no difference in the principles upon which these investigations proceed at Doctor’s Commons, and those principles which are laid down by the Supreme Court of North Carolina upon the trial of an issue of devisavit vel non before a jury, except that in the former, the court adjudges the law and finds the facts also, while in the latter it is the province of the court to explain by stating what conclusion may be drawn from the evidence, but whether it establishes a fact, is the province of the jury to say. But a wise application of the facts, under a proper charge of the court, will lead a jury to the same result that a judge of probate would arrive at, in a similar case in England. It requires only the exercise of sound, common sense, and a know *335 ledge of men, in order to perceive the propriety of the principles above stated. All know that a man in extremis, of feeble intellect, may be easily imposed upon by those in whom he confides. If, therefore, a party standing in such relation, to such a testator, prepares a will in his own favor, it cannot but excite suspicion and create in the minds of those who are called on to pronounce for the will, a desire to have other evidence than proof of the execution of the instrument and the testable capacity of the deceased. And in our judgment, in such case, a jury ought to pronounce against a will, unless some evidence is adduced to show that the testator had knowledge of its contents.
6. The court, in the conclusion of his charge, told the jury, that it was necessary, at all events, when the writer is materially benefited by the will, that they should believe from the evidence that its contents were known to the testator and approved by him, and that mere previous declarations in conformity with the will, would not be sufficient for that purpose. This instruction it is insisted is erroneous; and such is our opinion. Previous declarations of a testator, in conformity to the will, often repeated and continuing up to near the time of its execution, all indicating the purpose, which the contents of the will develope, is certainly in reason, as well as upon authority, satisfactory evidence that the testator knew the contents of the will. If his honor, therefore, intended to assert, as an abstract proposition, that previous declarations in conformity to the will, would not be sufficient to show that the testator had a knowledge of the contents, we think he erred, and in this case his error might Jiave misled the jury and have induced them to disregard the evidence of previous declarations altogether, whereas these declarations should have been weighed by them and considered in connection with other declarations of a contrary character, and such judgment formed as upon the entire evidence on this subject, a reasonable mind would be satisfied with. But if his honor intended to say, that such declarations as are. proved in this case, are not sufficient to establish the fact, that the testator knew the contents of the will, then he erred in assuming the province of the jury. Under our system, the judge is not per- *336 milted to decide upon the sufficiency of testimony. The judge may explain what conclusions may be drawn from the evidence, but whether it is sufficient to establish the fact, thejury may say.
In this case his honor said, mere declarations were not sufficient to prove knowledge. Now, whether in a given case, the declarations proved, would be sufficient to satisfy the jury that the testator had knowledge of the contents of the will, must depend upon the character of the declarations, when made, and whether they had been uniform. Or, if there were opposing proof showing declarations of a contrary character, it would be for the jury to weigh the evidence and determine whether the witnesses should be believed, or whether these opposing declarations showed that the testator had no fixed purpose. The weight and influence of such declarations, must in every case depend upon the facts in reference thereto. They may or may not be sufficient; but it is not a question for the judge to determine. It is insisted by the counsel for the defendant in error, that if this court should deem the charge of his honor erroneous in this particular, still the judgment should not be reversed, because this court can determine from the proof that the declarations of the testator were not of a character, from which his knowledge of the contents of this will may be inferred. This court cannot act upon the principle here stated. While on the one hand, we do not set aside a verdict of a jury because contrary to the evidence, unless the preponderance be very great; on the other hand, it becomes essential for the preservation of this principle, that the judge shall state the law correctly to them. If he err in a matter that might have misled, or if be trench upon their peculiar province, consistency demands that we should reverse the judgment and award a new trial.
Let the judgment be reversed, and the cause remanded for another trial to be had thereon.